IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
ROCHESTER DIVISION

| | | |
|---|---|---|
| MICHAL GEIGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 6:18-CV-06643 |
| UNIVERSITY OF ROCHESTER, | ) | |
| | ) | COMPLAINT |
| Defendant. | ) | |
| | ) | JURY TRIAL DEMAND |
| | ) | |

**NATURE OF THE ACTION**

This is an action brought to address violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794 and Title II of the Americans with Disabilities Act of 1990, to correct unlawful and discriminatory practices on the basis of disability and to provide appropriate relief to a student of Defendant's School of Nursing, who was adversely affected by such practices. As alleged with greater particularity herein-below, Plaintiff alleges that Defendant University of Rochester ("Defendant" or "U of R") discriminated against Michal Geiger, who is a qualified individual with a disability, when it failed to provide reasonable accommodation for Plaintiff's qualified disabilities and when it subjected Plaintiff to materially adverse conditions while a student at this institution of higher learning. As described in more detail below, the allegations include retaliation for Plaintiff's lawful complaints to U of R about discrimination, as well as allegations of Defendant's violation of Title IX of the Education Amendments of 1972. Plaintiff was also the victim of religion discrimination, as set forth below, in violation of Title VI of the Civil Rights Act of 1964.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794(a); 42 U.S.C. Sec. 3613; 28 U.S.C. Sec. 1331; and 28 U.S.C. Sec. 1343

2. The discriminatory practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York, Rochester Division.

3. Venue is proper in this Court pursuant because: (i) University of Rochester is located in the City of Rochester, and County of Monroe, New York; and (ii) Defendant, by and through its authorized agents, committed the alleged proscribed acts of discrimination and retaliation which were the acts giving rise to this action, within this district.

## PARTIES

4. Plaintiff, Michal Geiger ("Plaintiff" or "Michal Geiger") is an individual who currently resides in the State of Florida, but who resided in Rochester, New York and attended Defendant University of Rochester in Monroe County, New York, at all relevant times hereto, where the events giving rise to this action occurred.

5. At all relevant times, Defendant, University of Rochester ("Defendant" or "U of R"), is an institution of higher education and a University located in the city of Rochester, New York, County of Monroe and has continuously had at least 15 employees.

6. At all relevant times, Defendant U of R has been a program or activity within the meaning of the Rehabilitation Act insofar as Defendant receives amounts of federal funding which subjects it to the above-referenced legislation.

7. The curriculum in which Plaintiff was enrolled at relevant times hereto constitutes a program or activity within the meaning of the Rehabilitation Act.

## STATEMENT OF CLAIMS

8. At relevant times hereto, Defendant engaged in unlawful discriminatory practices affecting Plaintiff, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794(a). The practices include refusing to accommodate Plaintiff, a qualified individual with a disability.

9. The effect of the practices complained of above has been to deprive Michal Geiger of equal educational opportunities, to successfully matriculate from Defendant U of R's School of Nursing, and to otherwise adversely affect her status a student at U of R, because of her disability.

10. The unlawful discriminatory practices complained of herein-below, were intentional.

11. The unlawful discriminatory practices complained of herein-above were done with malice or with reckless indifference to the federally protected rights of Plaintiff Michal Geiger.

## FACTUAL ALLEGATIONS

12. Plaintiff suffers from qualified disabilities (Attention Deficit Disorder and Post-Traumatic Stress Disorder) which she suffered from at all relevant times hereto and about which Plaintiff duly put defendant on actual notice.

13. Plaintiff was a student at Defendant's school of nursing at all times relevant hereto.

14. Defendant University of Rochester discriminated against Plaintiff on the basis of her disabilities by failing to provide her with a quiet, separate room for test taking as an approved academic adjustment for her courses in the fall of 2015 and spring of 2016 semesters.

15. Defendant failed to approve Plaintiff's good faith request for a three day extension to submit assignments in the spring of 2016 causing her adverse grading consequences as a direct result of that discriminatory act.

16. During the fall semester of 2015, Defendant harassed Plaintiff by subjecting her to more stringent academic standards than non-disabled students, specifically in regards to the Nursing 377 course, and generally in the fall of 2015.

17. On February 9, 2016, Defendant failed to provide Plaintiff with complete instructions during an examination despite Defendant's knowledge that complete and proper exam-taking instructions was necessary for Plaintiff to be able to perform satisfactorily on the exam in light of her particular disabilities (particularly ADD). Said failure had a material effect on Plaintiff's ability to complete said examination as a result of her status as a disabled student (ADD and PTSD).

18. Worst of all, the University of Rochester retaliated against Plaintiff after she repeatedly complained about discrimination with Defendant's school during the fall 2015 semester, and after she filed a complaint with the Office of Civil Rights at the United States Department of Education when it assigned a University staff member about whom Plaintiff had already complained, to proctor her examination on January 25 and February 9 of 2016.

19. The foregoing retaliation caused actual adverse consequences to Plaintiff in the form of her grade, which suffered as a direct result thereof, and ultimately contributed to her ouster from the University.

20. University of Rochester also retaliated againstPlaintiff when, by and through administrators of Defendant, it prevented Plaintiff from filing a grievance regarding discrimination she had endured during the fall 2015 semester. The foregoing retaliation was motivated by the fact that Plaintiff repeatedly complained about U of R's disability and other forms of discrimination while a student at U of R School of Nursing.

21. Defendant retaliated against Plaintiff for having filed a complaint alleging disability discrimination as well as other forms of discrimination and harassment with the US Department of Education, Office of Civil Rights when it denied her re-enrollment for the spring 2016 semester and when it denied Plaintiff a grade change and waiver of tuition fees in or around January 2016. Plaintiff will prove by or before trial that other students who had NOT engaged in the same protected act of complaining about discrimination against the school were granted the same relief she sought from the school.

22. Defendant retaliated against Plaintiff for filing her complaint with OCR when it unfairly graded and unfairly re-graded a paper from a course she took in the fall of 2015 retaliatorily for having complained about disability discrimination previously with the school, and it also retaliated against Plaintiff when U of R denied Plaintiff's request for an advocate to accompany her to a meeting with University Council in or around the fall of 2015.

23. With respect to the allegations of retaliation against the University of Rochester, all retaliation alleged occurred as a direct and proximate result of Plaintiff's protected activity (filing a complaint with OCR, about which Defendant was put on actual notice). The University of Rochester was fully aware of Plaintiff's protected activity. As a result of having engaged in that protected activity of complaining about disability discrimination, Plaintiff suffered adverse

actions. Indeed, shortly subsequent to the University learning about Plaintiff's complaint with OCR, it acted out in the manner set forth above and to be proven at or before trial.  Thus, there exists a causal connection between Plaintiff's complaint alleging discrimination against the University of Rochester in the OCR and the adverse actions she suffered as a result of the U of R's retaliatory motivation.

24. More specifically, with respect to the U of R's failure to accommodate Plaintiff for her disability, the following events gave rise to the instant Complaint:

**Failure to provide an appropriate separate location for testing**:

On September 11, 2015, Carolanne Bianchi (co-course coordinator) indicated that the exam would be held in her office.  The exam was not given to Plaintiff in a "quiet, separate room for test taking" as per her known accommodations.

25. Carolanne Bianchi told Plaintiff that she was not permitted to use the restroom (other students were permitted to leave the testing room at any time to use the restroom).

26. The clacking from Bianchi's keyboard was extremely distracting to Plaintiff during the test, and made it very difficult for her to concentrate.  Due to the foregoing intentional disability discrimination and discriminatory harassment by Bianchi, Defendant failed to adhere to Plaintiff's known accommodations. As a result, Plaintiff failed said exam; something she had *never* experienced before.

27. On October 2, 2015, at yet another exam, Plaintiff was not given a "quiet, separate room for test taking" as per her specific and well known accommodations.  To make matters worse, she was initially given the wrong exam to take.  When the test began, she told Ms. Kita that she was very distracted and unable to concentrate due to the clacking on her keyboard and she responded that no other rooms were available for me to take the exam. She continued to

make the clacking noise on her keyboard, causing Plaintiff's performance on her exam to suffer.

28. Plaintiff took another exam on October 12, 2015. During this exam, Plaintiff was given a private room in which to take the exam. However U of R, by and through Ms. Kita, refused to close the door to the exam room, reversing the benefits that Plaintiff derived from a quiet and separate room as per her accommodations in place at the time. Plaintiff was told by Ms. Kita that the door must be kept open as this was U of R's "new policy".

29. During the October 12, 2015 exam, Plaintiff was followed into the bathroom by Elaine Andolina (co-program director), while other non-disabled students, upon information and belief, were not followed or accompanied to the bathroom during examinations.

30. In addition, Defendant routinely "checked on" Plaintiff during her exam. Ms. Kita interrupted Plaintiff's examination several times, ostensibly to "check in on her". However, Plaintiff found this to be very distracting, unnecessary, and contrary to her known accommodations, one of which was to be free from any unnecessary distractions while taking an examination.

31. Ms. Kita's interruptions made it unnecessarily difficult for Plaintiff, given her disability (ADD) to refocus. During previous semesters, Plaintiff had not been interrupted as such, and Plaintiff attributed the frequent interruptions to yet further disability discrimination by Defendant U of R.

32. On October 27, 2015, Plaintiff sat for yet another exam. This exam was not given to Plaintiff in a "quiet, separate room for test taking" per her accommodations. She was again followed into bathroom by Elaine Andolina. Plaintiff would have been able to perform her examination and to otherwise matriculate had her accommodations been adhered to. The accommodations were put in place precisely to allow Plaintiff equal opportunity to succeed as a

student in the School of Nursing, and Defendant intentionally and repeatedly sabotaged those accommodations.

33. On November 10, 2015, Plaintiff sat for another exam, this time in a private room. However, Plaintiff was again told by Ms. Kita that the door needed to be kept open and she forbade Plaintiff from using the restroom.

34. All other non-disabled students were allowed to use the restroom during exams, yet Plaintiff was not permitted to do so.

35. During said exam, Defendant "checked on" Plaintiff. Ms. Kita "checked on Plaintiff several times during her exam, which was extremely distracting and made it difficult for Plaintiff to refocus. Defendant had never sabotaged Plaintiff's exam-performance in this manner during previous semesters.

36. Plaintiff's exam accommodations were also consistently violated during the Spring Semester of 2016.

37. Plaintiff applied for appropriate accommodations under Section 504 for the Spring 2016 semester. Plaintiff was newly-granted accommodations by U of R on January 8, 2016 including: (1) that she be given a private room for examinations, to aid in Plaintiff's ability to concentrate;   that the door to Plaintiff's private and proctored room would remain closed during the exam. (2) That there would be a clock in the testing room; (3) that the exams would be computerized; (4) that Plaintiff would be given the benefit of a peer note taker during classes. (5) that Plaintiff would have permission to record lectures; (6) that Plaintiff would have time and a half for exams. (7) that Plaintiff would have a 24 hour extension for handing in assignments.

38. Notwithstanding that the foregoing accommodations were ostensibly approved by U of R, Plaintiff's subsequent request for a three day extension of assignments as a result of her

religious observance of the Sabbath (Plaintiff is a devout Jewish woman, as well as her disability (ADD), Plaintiff was denied and the request was deemed "not reasonable as it would result in a fundamental alteration of the curriculum."

39. Dorota Mroczkowska of U of R informed Plaintiff that her Clinical instructor Dot Vandervoort granted the students in her Clinical group extensions for their papers until Tuesdays though they were due on Saturdays.  Therefore, the stated concern about a "fundamental alteration of the curriculum" would seem to be misplaced. As a student with a documented disability, in addition to her religious observance of the Sabbath that prohibited Plaintiff from working on her assignments (from Friday at sundown until Saturday at sundown), she was denied the same extension as other students without disabilities.

40. The foregoing discrimination occurred under circumstances giving rise to a strong inference of anti-Jewish sentiment and related discrimination against Plaintiff, a Jewish student at the U of R's School of Nursing.

41. Additionally, pursuant to an e-mail exchange between Plaintiff and Nancy Kita, ADA coordinator at the time, in or around January 21, 2016, Plaintiff was granted two options for examination-accommodations; she could either take her exams in a classroom with a proctor and the door would be shut, or she could take her exams in the student affairs office with the door open.  This renewal of accommodations was the result of the previous semester when Plaintiff's accommodations had been violated, and Plaintiff wanted to ensure that the proper and specific accommodations were in place to allow her equal opportunity to compete and matriculate in her curriculum.  Plaintiff requested a silent proctor for her first examination on January 25, 2016.

42. Plaintiff's accommodations were violated for the foregoing exam as she was

brought to a small room to take her exam with Elaine Andolina and forced to sit within just feet of her.  Ms. Andolina had previously followed Plaintiff into the bathroom the semester before.

43.     Plaintiff's anxiety was very triggered by Andolina's close proximity to her, in addition to the fact she had previously accused Plaintiff (falsely) of cheating.

44.     Plaintiff's accommodations contemplated that she be given a quiet classroom for all examinations but she was never given a classroom to take her examinations for all five examinations.   Not only was this instance an example of disability discrimination but also retaliatory as it appeared that Ms. Andolina was placed into the room as a proctor to intimidate Plaintiff because Plaintiff had named Andolina in a prior complaint filed with the Office of Civil Rights at the US Department of Education after she had followed Plaintiff into a restroom on more than one occasion during the previous semester.

45.     In an email from Ms. Kita to Plaintiff dated February 4, 2016, she confirmed that Plaintiff would be taking an exam on February 9, 2016 in the student affairs office and that the door, per policy, would be slightly open.  On the day of the exam, Plaintiff was rudely escorted by Ms. Andolina to a small computer lab that the school referred to as a "viewing room". Plaintiff's accommodation was denied and she was forced to take this exam again within just feet of Ms. Andolina.  Plaintiff's accommodations were violated yet again.

46.     In addition, Plaintiff had not been given instructions out loud as required for Plaintiff. Plaintiff was at a disadvantage as compared to all of the other students since she did not have the benefit of getting the same instructions they received out loud prior to the examination. Again, the University engaged in disability discrimination for this exam in addition to continued intimidation.

47.     In addition, Plaintiff was surprised to learn the day of the exam that Ms. Andolina

would be proctoring the exam. Plaintiff had been told to expect to take the exam in the student affairs office without a proctor.

48. Following this experience, Plaintiff complained to U of R about the abysmal treatment and disregard of her known accommodations. Plaintiff contacted the Intercessor, Ms. Lynnett Van Slyke, to inform her that her accommodations had been ignored or violated on previous examinations and that she did not feel comfortable with Ms. Andolina proctoring her exams due to her triggering her anxiety and PTSD. Ms. Van Slyke informed Plaintiff that she would be provided an alternative proctor. Plaintiff responded on February 26, 2016 that she understood that her quest to take the exam in a private room in the student affairs office was obviously denied, but that Plaintiff would nonetheless show up at 8:30 a.m. as scheduled.

49. This exam that took place on February 29, 2016 was another example of the University's failure to provide Plaintiff with the adequate and agreed upon testing accommodations per the disability accommodations she had been granted.

50. The third exam was also taken in the "viewing room" and was proctored by Ms. Pamela Brady. Despite Plaintiff complaining about previous disability discrimination and exam accommodation violations with the intercessor, Ms. Van Slyke did nothing to help Plaintiff as a student with disabilities.

51. Ms. Kita emailed Plaintiff on March 9, 2016, during her spring break to inform her that she was scheduled to take the fourth exam on March 21, 2016. Ms. Kita then emailed Plaintiff on March 17, 2016 informing her that Margaret Carno would be taking Plaintiff into the viewing room. Again, Plaintiff's accommodations were ignored and violated insofar as a classroom was not provided to Plaintiff along with a proctor.

52. Ms. Carno had a computer beside her, ostensibly for Plaintiff to take her

11

examination while seated right next to the proctor. Plaintiff immediately complained that she had never been subjected to sitting right next to a proctor and she permitted Plaintiff to move over only two or so feet. Plaintiff felt extremely uncomfortable with a proctor sitting within such close proximity to her, and it triggered Plaintiff's anxiety, and symptoms of PTSD.

53. Plaintiff was not afforded the testing accommodation for this foregoing test. Therefore, yet again, Defendant had engaged in disability discrimination against Plaintiff in an apparent effort to sabotage her career as a Nursing Student; a plan that would eventually succeed for the U of R.

54. Ms. Carno tried to intimidate Plaintiff by coercing her into sitting so close to her. Evidently, the School of Nursing utilized the Chair of the Student Affairs Committee to take Ms. Andolina's place to try and intimidate her during her exams.

55. Plaintiff e-mailed Ms. Kita on March 27, 2016 requesting to take her next exam and assessment test in the student affairs office and Ms. Kita's reply of March 28, 2016 instructed Plaintiff to come to her office and be escorted to the viewing room by Margaret Carno for both the morning exam and afternoon assessment test. Again, Plaintiff's accommodations were ignored and violated. The small viewing room that Plaintiff was forced to take her exams in had cameras, which exacerbated Plaintiff's anxiety and which Defendant knew would cause Plaintiff to suffer anxiety.

56. Plaintiff's accommodations would have enabled her to have taken all of her exams in a classroom OR in the student affairs office in a private room. Her requests were all denied and thus Plaintiff's disability accommodations were denied for all of her exams including the final assessment. All of her exams including the final proctored assessment reflected outright disability discrimination by Ms. Kita, the ADA coordinator, Ms. Andolina, the co-program

director, Ms. Brady, the co-course coordinator, Ms. Van Slyke, the intercessor, and Ms. Carno, the Chair of the Student Affairs Committee, and vicariously, the U of R since all of the foregoing individuals were employed by U of R and acting within the scope of their respective employment at relevant times.

57. By far the most egregious violation of Plaintiff's accommodations occurred during her last examination. Plaintiff had previously complained of being distracted by keyboard clacking during fall '15. During her last examination of the Fall 2015 semester, Plaintiff was subjected to clacking on a keyboard, the proctor sitting within inches of her, and to noise from the large computer lab next door. Plaintiff didn't even get the benefit of having the door kept shut to the viewing room as students would enter the computer lab and be told that a test was in progress and they needed to go elsewhere to use computers.

58. Given Plaintiff's severe ADD, the viewing room was clearly not conducive to the silence she required to take her exams, but the School of Nursing nonetheless knowingly violated the accommodations. The combination of violations which occurred during the last examination made it impossible for Plaintiff to concentrate and the failing grade she received on her last examination demonstrates that the intentional disregard for her accommodations had its intended effects.

59. The foregoing discriminatory conduct was vicious, malicious and intentional, and done with a malignant heart designed not only to deprive Plaintiff of her right to reasonable accommodation, but also to cause severe emotional distress and pain and ultimately, to cause her forced ouster from the Nursing program at U of R.

60. The defendant accomplished its goal of harming Plaintiff emotionally, as well as financially and physically and she now, therefore, brings this action herein.

## COUNT I
## Violation Of the Rehabilitation Act

61.     Plaintiff re-alleges and incorporates by reference paragraphs 1-60 of this Complaint.

62.     Pursuant to the Rehabilitation Act, it is unlawful to discriminate against a qualified individual with a disability in the rights and privileges of a public accommodation.

63.     University of Rochester School of Nursing is a program or activity within the meaning of the Rehabilitation Act.

64.      § 504 of the Rehabilitation Act provides:

No otherwise qualified individual with a disability…, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…

65.     Defendant U of R receives Federal funding.

66.     Defendant U of R's curriculum in which Ms. Geiger was enrolled, constitutes a program or activity within the meaning of the Rehabilitation Act.

67.     Defendant U of R's conduct was based on Plaintiff's status as a person with a disability.

68.     Defendant U of R did not:

   a) Conduct a bona fide and proper individualized assessment;
   b) Engage in the interactive process;
   c) Provide acomodations for Plaintiff's disability as required under the Act;
   d) Explore reasonable modifications and/or accommodations; and/or
   e) Allow Plaintiff to realize the benefits of participating in its program covered by the law.

69.      At all times relevant to this Complaint, Defendant had knowledge of Plaintiff's disabilities, and her record of disabilities, and regarded Plaintiff as having a disability.

70. Defendant, by virtue of the conduct described herein, discriminated against Plaintiff because of her disability in violation of Section 504 of the Rehabilitation Act of 1973.

71. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic loss, pain, suffering, fear, humiliation, embarrassment, severe emotional distress, and other injuries.

## COUNT II: Religion Discrimination in Violation of Title VI of the Civil Rights Act of 1964.

72. Defendant refused to honor Plaintiff's religious accommodations so that she could observe the Sabbath, causing her adverse grading consequences and ultimately contributing to her ouster from the University of Rochester.

**WHEREFORE**, Plaintiff asks for the following relief:

A. A declaratory judgment that the Defendant has discriminated against Plaintiff by Defendant in violation of Section 504 of the Rehabilitation Act of 1973; and

B. An order requiring University of Rochester to comply with Section 504 of the Rehabilitation Act , and to provide other students in need with appropriate accommodations as necessary;

C. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against qualified individuals with a disability when seeking reasonable accommodation for said qualified disability or from retaliating against individuals with a disability because said student(s) lawfully complained about discriminatory treatment.

D. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal opportunities for qualified individuals with a disability, which eradicate the effects of its past and present unlawful employment practices;

E.      Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful and discriminatory practices described herein-above, including but not limited to: medical expenses, attorney's fees and all other out of pocket and anticipated expenses in amounts to be determined at trial.

F.      Order Defendant to make whole Plaintiff by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the discrimination complained of herein-above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, as permitted by statute, in amounts to be determined at trial.

G.      Order Defendant to pay Plaintiff individual punitive damages for its malicious and reckless conduct, as described herein-above, in amounts as and to the extent permitted by applicable statutes and/or case law to be determined at trial.

H.      Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

S:/ James D. Hartt
**JAMES D. HARTT, ESQ., Bar #516129**
**Attorney For Plaintiff**
**70 Linden Oaks, Third Floor**
**Rochester, NY 14625**
**Telephone: (585) 490-7100**
**Fax: (585) 425-0579**

ORIGINAL of the foregoing was
filed this 10th day of September, 2018 with:
The Clerk of the Federal District Court
Western District, New York

16